## W. T. RAWLEIGH CO. v. THRASHER et al.

### No. 4722.

Court of Appeal of Louisiana. Second Circuit.

March 29, 1934.

R. L. Williams, of Arcadia, for appellant.

Goff & Goff, of Arcadia, for appellees.

DREW, Judge.

B. J. Humphreys, a representative of the W. T. Rawleigh Company, purchased certain goods, wares, and merchandise from said company during the years 1923, 1924, and 1925. The defendants herein signed a surety contract on behalf of Humphreys in which they jointly, severally, and unconditionally

promised and guaranteed the full and complete payment of the balance due the said Rawleigh Company for goods sold and delivered to Humphreys during the period of 1923, 1924, and 1925. They further agreed that the written acknowledgment by Humphreys of the amount due on his account would in every respect bind them. They further agreed that it should not be necessary for the said seller, in order to enforce this contract of surety, to first institute suit against said buyer or to exhaust its legal remedies against him before proceeding against the sureties.

The contract between the Rawleigh Company and Humphreys provided that either party might at any time before the expiration of the term of the contract, by written notice, terminate it, and when so terminated, the account then due should become immediately due and payable.

The contract was terminated by written notice given by the Rawleigh Company on the 14th of July, 1925, and the full amount due at that time given to Humphreys. The account was not paid, and plaintiff instituted this suit against the sureties on May 11, 1928, for the sum of $960.49, the amount alleged to be due plaintiff by Humphreys. In article 3 of the petition it is alleged that plaintiff sold and delivered to B. J. Humphreys goods to the amount of $1,196 during the years 1923, 1924, and 1925, on which was paid during the year 1925, beginning January 2, 1925, and ending July 18, 1925, the amount of $236.-15, leaving a balance of $960.49. The petition further alleged that B. J. Humphreys had departed from Bienville parish, La., and petitioner was unable to find his then address. It reserved its right of action against the said Humphreys. Attached to the petition is an account showing balance brought forward to 1925, $912.63, then shows the amount purchased on certain days in January, February and April, 1925, together with the different amounts paid during 1925, beginning January 2d and ending July 18th. The account was not itemized. Defendants filed a prayer for oyer of the itemized account which was filed by plaintiff, itemizing every purchase beginning with December 10, 1922, and ending April 3, 1925, showing the total amount purchased to be $2,463.24, and itemizing the payments made thereon, beginning December 27, 1923, and ending July 20, 1925, totaling $1,502.75, leaving a balance due of $960.49, the exact amount sued for.

Defendants then answered, in which they admit signing the surety contract, but deny owing anything under the provisions of the contract. They admit that plaintiff sold goods to Humphreys to the amount of $1,196 during the period of 1923, 1924, and 1925, and allege that more than $1,500 had been paid on same. Defendants further allege that plaintiff violated its contract with Humphreys by refusing to ship him goods on orders which were accompanied by cash, and, without Humphreys' consent, applied the money sent with orders to Humphreys' account and refused to ship him goods ordered; that it directed Humphreys to sell goods on credit without the consent of defendants, thereby changing the contract, to the prejudice of the sureties; that it refused to ship him other goods to be sold to customers that he might continue his work and collect for goods sold on credit, and made it impossible for Humphreys to continue his work and collect for goods he had sold on credit; that for these reasons, defendants have been discharged as sureties. They also plead prescription of three years to said account.

### Plea of Three-Year Prescription.

On June 30, 1924, plaintiff sent to Humphreys a statement of his account with them showing at that time a balance due of $981.09, at the foot of which is the following addressed to plaintiff:

"I have examined the above statement of account and find the balance of $981.09 to be the correct balance due the company at the close of business June 30, 1924, which balance I agree to pay according to the terms of the contract.

"[Signed] B. J. Humphreys
"Bryceland, Bienville Parish, Louisiana."

The account thus acknowledged was subject to the prescription of ten years (Civ. Code, art. 3544) and not three years (Civ. Code, art. 3538). Ashbey v. Ashbey, 38 La. Ann. 902; James v. Fellowes & Co., 20 La. Ann. 116; Henry Block Co. v. Papania, 121 La. 688, 46 So. 694, 695.

The account created after June 30, 1924, is an open account and has never been acknowledged; therefore, it is subject to the prescription of three years.

Humphreys wrote plaintiff in regard to his account on June 26, 1925, but in that letter he does not acknowledge the correctness of any account, and the letter is not sufficient to change the account from an open account to an acknowledged account.

The undisputed evidence is that the last payment made by Humphreys on any ac-

count due plaintiff was on April 29, 1925. The credits of May 14, July 18, and July 20, 1925, were given to Humphreys without his knowledge or consent. On each of these occasions he sent orders for goods to plaintiff and accompanied the orders with a check for the exact amount of the goods ordered. The goods were not shipped and the money was credited to his account. There was no voluntary payment by Humphreys, nor was there any acquiescence on his part, and the mere fact that plaintiff illegally held his money and gave him credit cannot have the effect of interrupting prescription.

■ The last voluntary payment being on April 29, 1925, and this suit was not filed until May 11, 1928, three years had elapsed, and the account made after June 30, 1924, is therefore prescribed. Furthermore, any and all payments made by Humphreys after June 30, 1924, would have to be imputed to the oldest account which was acknowledged, unless special request that it be otherwise imputed was made by Humphreys. There was no such request.

We therefore conclude that all of the account made after June 30, 1924, is prescribed, and that plaintiff will be entitled to recover in any event only the difference between the amount of the account on June 30, 1924, amounting to $981.09, and the amount paid by Humphreys thereafter, which amounts to $736.15, or $244.94.

The defense urged that plaintiff authorized Humphreys to sell on credit without its consent is without merit. The contract between plaintiff and Humphreys deos not provide that Humphreys shall sell for cash. It is silent on this point. It is not shown how the failure of plaintiff to ship the last three orders of goods to Humphreys in any way injured defendants. It is certain that when plaintiff credited Humphreys' account with the money sent with the last three orders, it reduced the amount of defendants' liability.

■ Another defense urged is that plaintiff is bound by its pleadings wherein it alleged that it sold and delivered goods to Humphreys to the amount of $1,196 during the years 1923, 1924, and 1925, and cannot prove any greater amount. This defense is entirely without merit. Defendants prayed for oyer of an itemized account, and when it was filed, it became a part of the pleadings and controlled the allegations of the petition, and, furthermore, there is no difference between the account attached to the original petition and the itemized account filed in answer to the prayer for oyer, except that one is fully itemized and the other is not.

■ The only other defense urged that could have any merit is that plaintiff violated the contract with Humphreys by refusing to ship him goods prior to the time the contract was terminated. The contract was terminated on July 14, 1925, and plaintiff failed or refused to ship goods to Humphreys on orders accompanied by cash or check on three occasions prior to July 14th.

Defendants have not shown by any evidence that the failure on the part of plaintiff caused them any injury. It is certain that defendants' liability was reduced when the money for the three orders was credited against the account. Defendants do not show that any other goods were ordered by Humphreys and not shipped to him. They contend that the failure of Humphreys to get the goods ordered, made it impossible for him to get over the country and collect what was owing to him for goods sold on credit. There is no evidence to support this contention and there is no testimony to show that, had Humphreys received the small amount of goods ordered, he could have sold them and paid his debt to plaintiff. Defendants have failed to show any injury to themselves on this account. The court would have to go a long way on supposition to hold otherwise, as there is no evidence in the record to support defendants' contention on this point, other than plaintiff failed to ship Humphreys a small lot of goods on three occasions, namely, May 14, July 8, and July 20, 1925. At this time Humphreys was far behind with his account and there was apparently little likelihood that he could pay it. There can be no doubt that under the contract plaintiff could have terminated it at any time, and if it had terminated the contract on May 14th, which it had a right to do, defendants would have been in the same position they are now. There is nothing in the contract which binds plaintiff to assist or do anything in the collection of Humphreys' account. Watkins Co. v. Hoggatt et al., 13 La. App. 512, 128 So. 180.

The same defense was made in that case as in the case at bar.

We therefore find that plaintiff's failure to ship the goods ordered was not such a violation of the contract as to release the sureties thereon from liability.

It therefore follows that the judgment of the lower court is reversed, and there is now judgment in favor of plaintiff, the W. T. Rawleigh Company, against defendants, J.

T. Thrasher, T. J. Cummings, and T. A. Loe, in solido, for the full sum of $244.94, with 5 per cent. per annum interest thereon from July 14, 1924, until paid; and for all costs of this suit in both courts.

The record as put together in this case is the worst that has ever come into this court. The filings are in the wrong places; part of the depositions are in one part of the record, and the other part of the depositions are in another. A great number of the numerous documents filed are in the record backwards. To examine and study this record has taken three times the necessary time, due to its condition. We seriously considered remanding the entire record in order that it might be put together properly, and in future we will take just that course. This court has more than is humanly possible for three judges to handle and keep up with the docket, and is entitled, at least, to have the records in the best possible shape. If there were many records that came to this court in the condition of this one, the number of cases we could study and decide would be greatly reduced.

All filings in any case should be placed in the record in the order in which they were filed, and in future we will expect this to be done, or the records will be remanded for that purpose.